The only question in this case is whether the offense for which Powell and De Armas were adjudged guilty of contempt of court, and were punished by imprisonment, was a sufficient cause also for the judge to discharge them as members of the grand jury. The offense consisted of an attempt on the part of Powell and De Armas to read in open court a petition which the judge forbade them to read without first allowing him to read it. Powell and De Armas are not complaining now that they were adjudged guilty of contempt of court, or that they were punished by imprisonment for the offense. They were arrested and imprisoned, technically, at the moment when they committed the offense; and they had served their term of imprisonment when the judge sentenced them. What they complain of now is that the judge afterwards discharged them from the grand jury for the same offense for which they were punished by imprisonment for being in contempt of court.
My opinion is that the offense for which Powell and De Armas were held to be in contempt of court was not a legal *Page 997 
or sufficient cause for the judge to discharge them as members of the grand jury. The judge himself, evidently, did not believe, when Powell and De Armas committed the offense, or when the judge sentenced them for contempt, that the offense was a legal or sufficient cause also for the judge to discharge them from the grand jury. The judge did not warn them that he would discharge them if they attempted to read the document aloud without first allowing him to read it. On the contrary, he merely warned them that he would hold them in contempt of court if they insisted upon reading the document aloud without first allowing him to read it. It was after the judge had sentenced Powell and De Armas for contempt of court, and after they had served their sentence, that the judge ascended the bench again and discharged Powell and De Armas from the grand jury for the offense for which they had paid the penalty.
For a judge to discharge a grand juror for conduct which the judge declares renders the man disqualified or unfit to serve on the grand jury is a severe and humiliating punishment. It is a punishment which cannot be inflicted legally as a penalty for contempt of court. The punishment in such a case should be merely a necessary incident to the discharging of the grand juror for being actually disqualified or unfit for service on the grand jury. Powell and De Armas are not disqualified or unfit for service as grand jurors. On the contrary, as far as their qualifications and fitness for grand-jury service are concerned, the conduct, for *Page 998 
which they were held to be in contempt of court, was evidence of their being over zealous in the performance of their duties as grand jurors.
If I believed from the facts of this case that Powell and De Armas intended to persist in offending Judge Platt or the district attorney, or if I believed that Powell and De Armas intended, as grand jurors, not to work in harmony with the judge and the district attorney, I would deem that to be a sufficient cause for the removal of Powell and De Armas from the grand jury. But I believe that they will be courteous to the judge and faithful grand jurors if given another chance. As they say in their brief, they acted not in the obstruction or avoidance of the administering of justice, but in the furtherance of it; and hence their error was due not to any want of a sense of duty, but to an excess of zeal in that regard.
If Powell and De Armas are disqualified or unfit for service on this grand jury, so are the five other grand jurors who signed the petition which caused Powell and De Armas to be discharged from the grand jury. I refer, of course, to Messrs. Utley, Quarles, Hausnecht, Bellot, and Davis; all of whom signed the petition and delegated Powell to read it in open court, and four of whom actually went into court with Powell and De Armas and approved of their attempt to read the document aloud without first allowing the judge to read it. Hence, if the majority opinion in this case is right, only five of the twelve members of the *Page 999 
grand jury are qualified now to serve as grand jurors.
But I would not approve of discharging these seven members of the grand jury for their first offense. Grand jurors come fresh from among the people, every six months; and they are supposed to come as with a dozen new brooms. They are not as familiar as the judges and the other court officials are with the code of procedure in the criminal courts; and hence the grand jurors are more apt than the judges and other court officials are to make mistakes in their official conduct. We must remember also that Louisiana is now in a new era, which no one is accustomed to. It is an era in which there have been so many accusations of crimes of dishonesty in public office that it taxes the understanding and the patience, as well as the courage, of the grand juries, — both state and federal, — to investigate all of the charges, and to absolve the innocent, and indict those who they believe ought to be indicted, among the men who are suspected or accused. We cannot avoid a knowledge of this state of affairs; for it is commonly known and commented upon, with the utmost publicity, not only in Louisiana but throughout the whole United States. The average citizen in Louisiana has heard more and has read more about grand juries in the last few months than he had ever before heard or read about them in all his life.
Having served four years as a judge of one of the courts that try criminal cases, I am deeply impressed with the importance of upholding the authority of the *Page 1000 
judges over the grand juries. But, important as it is to uphold the authority and the dignity and honor of the judges in our courts of justice, it is not less important to maintain the integrity, the independence and autonomy of the grand juries. The grand jury is that part of the machinery of the criminal courts that puts the rest of the machinery in gear. In that respect there is no other institution in America that can equal the grand juries in importance. Their functions, in our scheme of government, are too often slurred over and underrated. If their work is perfunctory or superficial, it will amount to an abolishment of the criminal laws; for if the laws are not executed they are virtually abolished; and nothing but the activity and the courage and independence of the grand juries will put into execution the great mass of our laws. What the grand jury does may be taken as a test of the attitude of the community towards the law. If it is lax, or winks at offenses, there is danger that the community itself will drift into that deplorable condition where lawlessness has been found comfortable, convenient, safe, and profitable, and where human frailties and the greed for riches reconcile men's minds to infamy.
The declaration in article 196 of the Code of Criminal Procedure, that each grand jury, in the Parish of Orleans, shall be under the exclusive control and instruction of the judge who empaneled the grand jury, means nothing more than that that judge's authority to control and instruct the grand jury shall not be interfered *Page 1001 
with by any other judge of the criminal district court. The expression "exclusive control and instruction" is not intended to prevent the grand jurors from doing anything but what the judge or the district attorney instructs them to do. The oath which every grand juror takes, and which is prescribed in article 204
of the Code of Criminal Procedure, requires him to make diligent inquiry into, and true presentment of, not only such matters and things as the judge or the district attorney shall give him in charge, but also of such matters and things as shall "otherwise come to his knowledge". In fact, according to section 2140 of the Revised Statutes, it is a crime for a grand juror to fail to inform the other members of the grand jury of any violation of the criminal laws of this state, or of any crime that has been committed in the parish, since the sitting of the last preceding grand jury, that has come to his personal knowledge. If the offense which the grand juror fails to make known was only a misdemeanor the grand juror is subject to a fine not less than $50 or more than $500; and if the offense which the grand juror fails to make known is a felony he is subject to imprisonment in the penitentiary for a term not less than one year or more than five years.
I have said that the discharging of a grand juror from the grand jury is not a legal punishment for contempt of court. In support of that statement I cite section 17 of article 19 of the Constitution, and the statute enacted in obedience thereto. In that section of the Constitution it is *Page 1002 
declared: "The power of the courts to punish for contempt shall be limited by law." And, pursuant to that mandate, it is provided in article 12 of the Code of Criminal Procedure that the punishment which a judge of the Criminal District Court may impose for contempt of court is limited to a fine not exceeding $100 or imprisonment for a term not exceeding 10 days, or both the fine and imprisonment, within those limits. But the judge has no right to punish a man for contempt of court by discharging him from the grand jury. The decisions cited in the majority opinion, where men have been declared disqualified for service as grand jurors because of their having been convicted of a felony, or because of their being at the time charged with a crime or misdemeanor, are not appropriate to the present case, because, among the qualifications prescribed by law (in article 172 of the Code of Criminal Procedure) for a person to serve either as a grand juror or a petit juror, is the requirement that he shall be "not under interdiction or charged with any offense, or convicted at any time of any felony". At the time when Judge Platt discharged Powell and De Armas from the grand jury there was no charge pending against them, and they had not been convicted of a felony.
The long list of decisions quoted in the majority opinion in this case, putting a limit upon what grand juries may say in their reports, have nothing to do with this case, because the petition which the seven grand jurors signed, in this case, and which Powell and De Armas attempted to *Page 1003 
read in open court, was not in any sense a grand-jury report. The report of a grand jury has a well defined meaning, and is something very different from the complaint and request made by the seven grand jurors in their petition to Judge Platt.
It is argued that Powell and De Armas, by attempting to read the petition which was signed by them and by five other members of the grand jury, were attempting to violate article 210 of the Code of Criminal Procedure. But it seems to me that that article has no reference whatever to such a document as Powell and De Armas were about to read. The article of the Code has reference only to the findings, such as a true bill, or not a true bill, and the reports which are required to be made by not less than a quorum of the grand jury. It is declared in this article of the Code that the grand jury shall have power to act only in one of the following ways: First, by returning a true bill; second, by returning not a true bill; or, third, by pretermitting entirely the matter investigated. And it is declared also that, as the grand jury is an accusatory body and not a censor of public morals, it shall not make any report on any matter submitted to it for investigation, — except as provided in article 211; and in this article the subjects on which the grand juries are required to make reports are the prisons, places of detention, and asylums and hospitals in the parish, and the number of inmates, cost of maintenance, et cetera. But the report referred to in these articles of the Code is the grand-jury report, properly so-called, which must be made by not less than a quorum, or nine *Page 1004 
members, of the grand jury. That has nothing to do with such a document or petition as that which caused Powell and De Armas to be discharged from the grand jury. Their attempt to read the document was not a violation of any law. No contempt of court was displayed until Powell refused to allow the judge to read the document first. And, for that offense, which was committed by both Powell and De Armas, they were punished for contempt of court.
I have not found any evidence in this record to show that there has been a practice in Louisiana, on the part of grand juries, in their official reports or by resolution, of vilifying or defaming their political opponents, official adversaries, or personal or political enemies, without indicting the person or persons castigated or excoriated in the report or resolution. If that is a matter of common knowledge I must confess that heretofore I have not known it. And I have no such impression of the document which was signed by the seven members of the grand jury in this case, with instructions to Powell to read it in open court. For that reason I do not consider that the decisions which are quoted on pages 35 to 46 of the majority opinion [193 La. pages 974 to 989, 192 So. pages 674 to 679] are appropriate to this case. Those decisions refer only to grand-jury reports, properly so-called.
The making of the criticism in the petition which the seven members of the grand jury addressed to Judge Platt was not the purpose or object of the signers of the petition. If I believed that their purpose or object was merely to criticize the district *Page 1005 
attorney or his staff of assistants, I would not hesitate to condemn the conduct of the seven signers of the petition. But, as I understand it, the criticism was made only as an explanation of the cause for which the signers of the petition asked for the assignment of another attorney, and for an appropriation for that purpose. That matter, however, has been disposed of by the resignation of the district attorney, since the present proceeding was filed in this court. I assume that Powell and De Armas, if given the opportunity, will work in harmony with the new district attorney.
I concede that there is no statute authorizing the judge to appoint an outside lawyer to supersede or to assist the district attorney as the advisor of the grand jury; and I concede that there is no statute authorizing the judge to make or to obtain an appropriation to aid the grand jury in its investigations. But the request of the seven grand jurors in this instance was not forbidden by law. Perhaps the seven grand jurors were prompted by the fact that an outside attorney was designated to assist the grand jury in Baton Rouge during the last few months, and an appropriation of several thousand dollars was obtained from the police jury to aid the grand jury in its investigations. All of this, however, is in my judgment beside the question whether Powell and De Armas are disqualified for membership of the grand jury.
My opinion is that Powell and De Armas ought to be reinstated as members of the grand jury, with the instruction that they shall not hereafter make public any petition or complaint that is addressed to Judge *Page 1006 
Platt by them or by any other member or members of the grand jury, without first allowing the judge to read it.